```
                    UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF NEW MEXICO
```

In re:
DANIEL WILLIAM COOK and
YOLANDA T. COOK,
    Debtors.                              No. 7-04-17704 SA

SCOTT GARRETT and
PAMELA JANE GARRETT, TRUSTEES
OF THE SCOTT GARRETT AND PAMELA
GARRETT FAMILY TRUST DATED JUNE 14, 1999,
    Plaintiffs,                           Adv. No. 08-1074 S
v.

DANIEL WILLIAM COOK and
YOLANDA T. COOK,
    Defendants.

## MEMORANDUM OPINION ON DEFENDANTS' MOTION
## TO REQUIRE GARRETTS TO POST SECURITY

    This matter is before the Court on Defendants' Motion to Require Garretts to Post Security (doc 5), Garretts' Objection and Brief in Response to Defendants' Motion to Require Garretts to Post Security (doc 11), a Reply to Garretts' Objection and Brief (doc 13), and Garretts' Surreply to Debtor's Reply (doc 14). This is a core proceeding to determine the dischargeability of debt. 28 U.S.C. § 157(b)(2)(I).

**FACTS**

    Daniel and Yolanda Cook ("Cooks") filed a voluntary Chapter 11 petition on October 21, 2004. On August 16, 2006 the Court appointed a Chapter 11 Trustee. Doc 379. On February 14, 2008 the Chapter 11 Trustee resigned. Doc 674. On March 20, 2008 the Court converted the case to Chapter 7. Doc 726. The first meeting of creditors was scheduled for April 18, 2008 and the

last day to oppose discharge or dischargeability was June 17, 2008. Scott Garrett and Pamela Jane Garrett[1] timely filed the above captioned adversary proceeding that contains six counts. The first three counts seek a judgment against the Cooks under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6) respectively in favor of the Garretts. Counts 4, 5 and 6 seek a judgment against the Cooks under the same three code sections, but in favor of the Garretts in a derivative capacity on behalf of Trenchless Infrastructure Technologies, Inc. f/k/a Hydroscope Group, Inc., n/k/a Hydroscope Integrated Technologies, Inc. ("Hydroscope"), a Nevada corporation whose principal place of business is in Albuquerque, New Mexico.

The Cooks promptly filed their Motion to Require Garretts to Post Security under Nevada Revised Statutes 41.520[2]. They allege

---

[1] A separate Motion to Dismiss filed by the Debtors raises an issue of the identities/capacities/roles of the Garretts and questions ownership of certain stock held by the Garretts or their family trust. Those questions will be dealt with in another Memorandum. Therefore, references to the Garretts in this Memorandum are intended to include all their roles.

[2] That section provides:
1. As used in this section "corporation" includes an unincorporated association, and "board of directors" includes the managing body of an unincorporated association.
2. In an action brought to enforce a secondary right on the part of one or more shareholders in a corporation or association, incorporated or unincorporated, because the corporation or association refuses to enforce rights which may properly be asserted by it, the complaint must be verified by oath and must aver that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter
(continued...)

Case 08-01074-nlj    Doc 27    Filed 04/15/09    Entered 04/15/09 09:32:26 Page 2 of 8

[2](...continued)
devolved on him by operation of law. The complaint must also set
forth with particularity the efforts of the plaintiff to secure
from the board of directors or trustees and, if necessary, from
the shareholders such action as he desires, and the reasons for
his failure to obtain such action or the reasons for not making
such effort.
3. In any such action, at any time within 30 days after service
of summons upon the corporation or any defendant who is an
officer or director of the corporation, or held such office at
the time of the acts complained of, the corporation or such
defendant may move the court for an order, upon notice and
hearing, requiring the plaintiff to furnish security as
hereinafter provided. Such motion must be based upon one or more
of the following grounds:
(a) That there is no reasonable possibility that the prosecution
of the cause of action alleged in the complaint against the
moving party will benefit the corporation or its security
holders.
(b) That the moving party, if other than the corporation, did not
participate in the transaction complained of in any capacity.
The court on application of the corporation or any defendant may,
for good cause shown, extend the 30-day period for an additional
period or periods not exceeding 60 days.
4. At the hearing upon such motion, the court shall consider such
evidence, written or oral, by witnesses or affidavit, as may be
material:
(a) To the ground or grounds upon which the motion is based; or
(b) To a determination of the probable reasonable expenses,
including attorney's fees, of the corporation and the moving
party which will be incurred in the defense of the action. If the
court determines, after hearing the evidence adduced by the
parties at the hearing, that the moving party has established a
probability in support of any of the grounds upon which the
motion is based, the court shall fix the nature and amount of
security to be furnished by the plaintiff for reasonable
expenses, including attorney's fees, which may be incurred by the
moving party and the corporation in connection with such action,
including expenses which the corporation may incur by reason of
any obligation which it may have to indemnify its officers or
directors pursuant to NRS 78.7502 or otherwise. A determination
by the court that security either must or must not be furnished
or must be furnished as to one or more defendants and not as to
others shall not be deemed a determination of any one or more
issues in the action or of the merits thereof. The corporation
(continued...)

Case 08-01074-nlj    Doc 27    Filed 04/15/09    Entered 04/15/09 09:32:26    Page 3 of 8

that there is no reasonable possibility that the derivative actions will benefit the corporations, because the corporations are not creditors of the debtors. They also claim the complaint is defective because it was not verified as required by the Nevada statute.

The Garretts first responded by filing a verification. Doc 7. Then, in their objection and brief, doc 11, they argue that there is a reasonable possibility that the corporation could benefit from the dischargeability actions. They also argue that N.R.S. 41.520 is a Nevada procedural law that should not be applied by the Bankruptcy Court which instead should apply New Mexico or Federal procedural law.

**DISCUSSION**

**1.**     **Nevada Revised Statutes 41.520 is substantive law.**

---

[2](...continued)
and the moving party have recourse to the security in such amount as the court determines upon the termination of the action. The amount of the security may thereafter from time to time be increased or decreased in the discretion of the court upon showing that the security provided has or may become inadequate or is excessive. If the court, upon any such motion, makes a determination that security must be furnished by the plaintiff as to any one or more defendants, the action must be dismissed as to such defendant or defendants, unless the security required by the court is furnished within such reasonable time as may be fixed by the court.
5. If any such motion is filed, no pleadings need be filed by the corporation or any other defendants, and the prosecution of the action must be stayed, until 10 days after the motion has been disposed of.

> Derivative actions, for many years the most effective protection of shareholders against abuses by corporate management, have often been misused by shareholders suing with the hope of winning large attorney's fees or private settlements, and with no intention of benefiting [sic] the corporation on behalf of which suit is theoretically brought. Among the devices designed to remedy the evil of such strike suits, security for expenses legislation, originating in New York, is one of the most controversial. The New York statute has served as the basis for similar legislation in other states.

Note, Security for Expenses Legislation--Summary, Analysis, and Critique, 52 Colum. L. Rev. 267, 267-68 (1952)(Footnotes omitted). Nevada Revised Statutes 41.520 is Nevada's version of a security for expenses legislation.

In Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 555-56 (1949), the United States Supreme Court analyzed New Jersey's security for expenses legislation and found it to be substantive law, not a mere procedural device:

> [T]his statute is not merely a regulation of procedure. With it or without it the main action takes the same course. However, it creates a new liability where none existed before, for it makes a stockholder who institutes a derivative action liable for the expense to which he puts the corporation and other defendants, if he does not make good his claims. Such liability is not usual and it goes beyond payment of what we know as 'costs.' If all the Act did was to create this liability, it would clearly be substantive. But this new liability would be without meaning and value in many cases if it resulted in nothing but a judgment for expenses at or after the end of the case. Therefore, a procedure is prescribed by which the liability is insured by entitling the corporate defendant to a bond of indemnity before the outlay is incurred. We do not think a statute which so conditions the stockholder's action can be disregarded by the federal court as a mere procedural device.

## 2. The Court should apply Nevada's substantive law.

Diversity courts must apply the choice-of-law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Bankruptcy courts, however, sit pursuant to a special grant of federal jurisdiction, not through an accident of geography. Limor v. Weinstein & Sutton (In re SMEC, Inc.), 160 B.R. 86, 89 (M.D. Tenn. 1993).

> Unfortunately, the [Bankruptcy] Code provides no guidance on the manner in which conflicts of state law should be resolved. In the absence of any such direction, some courts have resorted to the rule in diversity of applying the choice of law provision of the forum state. See In re Velasco, 13 B.R. 872, 874 (Bankr. W.D. Ky. 1981); In re Maplewood Poultry Co., 2 B.R. 550, 553 (D. Me. 1980). Other courts have concluded that they may make an independent choice of law, and have usually done so by assessing with which state the action in question has the most significant contacts. See In re Kaiser Steel Corp., 87 B.R. 154, 157-60 (Bankr. D. Colo. 1988); In re Barney Schlogel, Inc., 12 B.R. 697, 700 (Bankr. S.D. N.Y. 1981); see also In re Holiday Airlines Corp., 620 F.2d 731, 734 (9th Cir.1980); In re Wallace Lincoln-Mercury Co., 469 F.2d 396, 400 n. 1 (5th Cir. 1972).
> Courts taking the latter approach rely on the Supreme Court's opinion in Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). In deciding what law to apply to determine a creditor's claim for interest on unpaid interest, the Court observed that
>> obligations ... often have significant contacts in many states, so that the question of which particular state's law should measure the obligation seldom lends itself to simple solution. In determining which contact is the most significant in a particular transaction, courts can seldom find a complete solution in mechanical formulae of the conflicts of law. Determination requires the exercise of an informed judgment in the balancing of all the interests of the states

Case 08-01074-nlj    Doc 27    Filed 04/15/09    Entered 04/15/09 09:32:26    Page 6 of 8

> with the most significant contacts in order
> best to accommodate the equities among the
> parties to the policies of those states.
> Id. at 161-62, 67 S.Ct. at 239.

Id. at 89-90.

The parties did not point out any New Mexico cases dealing with choice of law questions for derivative actions filed in New Mexico relating to foreign corporations. The Court also found none. However, New Mexico generally follows the Restatement of Conflicts of Laws. See, e.g., Ferrell v. Allstate Ins. Co., 144 N.M. 405, 422, 188 P.3d 1156, 1173 n.3 (2008). The Restatement (Second) of Conflict of Laws § 309 states:

> The local law of the state of incorporation will be
> applied to determine the existence and extent of a
> director's or officer's liability to the corporation,
> its creditors and shareholders, except where, with
> respect to the particular issue, some other state has a
> more significant relationship under the principles
> stated in § 6 to the parties and the transaction, in
> which event the local law of the other state will be
> applied.

Therefore, it appears that if the Bankruptcy Court were to follow New Mexico's probable choice of law, it would apply Nevada law because the corporation is a Nevada corporation. See also Labovitz v. Washington Times Corp., 900 F.Supp. 500, 503 (D. D.C. 1995), aff'd., 172 F.3d 897 (D.C. Cir. 1999)("When a particular claim addresses matters of corporate governance or other internal affairs of the organization, most states apply the law of the state where the corporation is incorporated.")

However, even if the Bankruptcy Court were to make an independent assessment of which law to apply based on the most significant contacts, it would chose Nevada. The main issue to be determined in Counts 4 through 6 are whether the Cooks have any liability to the corporation for the acts alleged by the Garretts. Nevada law defines the scope of liability of a director to a Nevada corporation. See N.R.S. § 78.138(7). Nevada has the most significant contacts to this case.

### 3. Conclusion.

The Court finds and concludes that it should apply N.R.S. § 41.520. The Court will schedule the hearing anticipated by that section to determine if security should be required and, if so, the amount.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

Date entered on docket: April 15, 2009

Copies to:

Chris W Pierce
Attorney for Garretts
Hunt & Davis, P.C.
P.O. Box 30088
Albuquerque, NM 87190-0088

Daniel J Behles
Cuddy & McCarthy, LLP
7770 Jefferson NE, Suite 305
Albuquerque, NM 87109